THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

ARIAN KOHLER,                              :
                                           :
    Plaintiff,                             : CIVIL ACTION NO. 3:19-CV-1310
                                           : (JUDGE MARIANI)
        v.                                 :
                                           :
SELECTIVE FIRE AND CASUALTY                :
INSURANCE COMPANY,                         :
                                           :
    Defendant.                             :

**MEMORANDUM OPINION**
**I. INTRODUCTION**

Selective Fire and Casualty Insurance Company's Motion for Summary Judgment

(Doc. 19) is pending before the Court.  With the Motion, Defendant seeks summary

judgment on the claims contained in Plaintiff Arian Kohler's Complaint and Defendant's

counterclaim.  This action arises from an accident which occurred in Puerto Rico when

Arian Kohler ("Plaintiff"), a Pennsylvania resident, was a volunteer for Healing Emergency

Aid Response ("Heart 9/11").  Plaintiff was a pedestrian crossing the street in San Juan

when he was struck by a vehicle which was not covered by an auto insurance policy.

Selective Fire and Casualty Company ("Selective" "Defendant") insured Heart 9/11 under a

commercial policy ("Policy") which was in effect at the relevant time.  Defendant asserts that

Plaintiff is not entitled to coverage under the terms of the Policy for the accident.  Plaintiff

maintains that he is entitled to coverage because the Policy is invalid and unenforceable

under Pennsylvania and New Jersey law.  For the reasons that follow, Defendant's Motion

will be granted in part and denied in part.

## II. STATEMENT OF UNDISPUTED FACTS

Plaintiff was a resident and citizen of Pennsylvania and a volunteer with Heart 9/11

in Puerto Rico when he was involved in an accident.  (Doc. 19-2 ¶¶ 1-2; Doc. 23 ¶¶ 1-2.)

On June 23, 2018, Plaintiff was crossing a road in San Juan when he was hit by a vehicle

that fled the scene.  (*Id.* ¶ 2.)  The driver of the vehicle was intoxicated, and the car was not

insured.  (*Id.* ¶ 3.)  As a result of the accident, Plaintiff suffered a broken leg, severed artery

in his leg, and perforated bowels.  (*Id.* ¶ 4.)  Plaintiff's right leg was amputated above the

knee, requiring a prosthesis.  (*Id.*)  Plaintiff obtained benefits for his injuries under his

person auto insurance policy issued by USAA and his homeowner's insurance policy issued

by Allstate.  (*Id.* ¶ 5.)

Selective issued Commercial Policy No. S 2202207 to Heart 9/11, a New Jersey

corporation, for the policy period March 22, 2018, to March 22, 2019.  (*Id*. ¶¶ 6, 7 (citing

Doc. 7-1).)

The Policy provides **Uninsured and Underinsured Motorists ("UM/UIM")**

**Coverage** pursuant to the Policy's New Jersey Uninsured and Underinsured Motorists

Coverage Endorsement Form SA 21 14 10 16.  (*Id*. ¶ 9 (citing Doc. 7-1 at pp. 32-37).)   The

Policy's UM/UIM Coverage is written on a Covered Auto Symbol 6 basis.  (*Id*. ¶ 10 (citing

Doc. 7-1 at 29).)  The Description of Covered Auto Designation Symbols in the Business

Auto Coverage Form indicates that Symbol 6 applies to "Owned 'Autos' Subject to a

Compulsory Uninsured Motorists Law":

> Only those "autos" you own that because of the law in the state where they are
> licensed or principally garaged are required to have and cannot reject
> Uninsured Motorists Coverage. This includes those "autos" you acquire
> ownership of after the policy begins provided they are subject to the same state
> uninsured motorists requirement.

(*Id.* ¶ 11 (citing Doc. 7-1 at 52).)

> The UM/UIM Coverage insuring agreement provides:

> We will pay all sums the "insured" is legally entitled to recover as compensatory
> damages from the owner or driver of an "uninsured motor vehicle" or an
> "underinsured motor vehicle". The damages must result from "bodily injury"
> sustained by the "insured", or "property damage" caused by an "accident". The
> owner's or driver's liability for these damages must result from the ownership,
> maintenance or use of an "uninsured motor vehicle" or an "underinsured motor
> vehicle".

(*Id.* ¶ 12 (citing Doc 7-1 at 32 § A.1).)

> The UM/UIM Endorsement defines who is an "insured" for purposes of the

Endorsement.

> If the named insured is designated in the Schedule or Declaration as a
> partnership, limited liability company, corporation or any other form of
> organization, then the following are "insureds":

>> a. Anyone "occupying" a covered "auto" or a temporary substitute for a
>> covered "auto". The covered "auto" must be out of service because of
>> its breakdown, repair, servicing, "loss" or destruction.

>> b. Anyone for damages he or she is entitled to recover because of "bodily
>> injury" sustained by another "insured".

>> c. The Named Insured for "property damage" only.

(*Id.* ¶ 13 (citing Doc. 7-1 at 33 § B.2).)  The Named Insured of the Policy at issue is "Healing

Emergency Aid Response, 9/11 Inc."  (Doc. 7-1 at 16.)

The Policy defines "occupying" as: "in, upon, getting in, on, out or off."  (Doc. 19-3 ¶

14 (citing Doc. 7-1 at 36 § F.3); Doc. 23 ¶ 14.)  The Policy identifies seven autos in the Auto

Schedule which constituted the Policy's covered autos.  (*Id.* ¶ 15 (citing Doc. 7-1 at 29).)

The Policy provides **Personal Injury Protection ("PIP") Coverage** pursuant to the

Policy's New Jersey Personal Injury Protection Form SA 22 30 12 17.  (*Id.* ¶ 15 (citing Doc.

7-1 at 38).)  The PIP Coverage insuring agreement provides:

> We will pay Personal Injury Protection Benefits for "bodily injury" sustained by
> an "eligible injured person" caused by an "accident" occurring during the policy
> period and arising out of the ownership, maintenance or use, including loading
> or unloading, of a "private passenger auto" as an auto.

(*Id.* ¶ 17 (citing Doc. 7-1 § A.1).)  The Policy's PIP Coverage section defines "eligible injured

person" as:

> a. The "named insured" and, if the "named insured" is an individual, any
>    "family member," if the "named insured" or the "family member" sustains
>    "bodily injury."
>
>    1) As a result of any "accident" while occupying, using, entering into or
>       alighting from a "private passenger auto;" or
>
>    2) While a "pedestrian," caused by a "private passenger auto" or by an
>       object propelled by or from a "private passenger auto."
>
> b. Any other person who sustains "bodily injury":

1) While, with you [sic] permission, that person occupying, using, entering into or alighting from the covered "auto" or

2) While a "pedestrian", caused by the covered "auto" or as a result of being struck by an object propelled by or from the covered "auto".

(*Id.* ¶ 18 (citing Doc. 7-1 at 50 § E.3).)[1]

The PIP Coverage contains the following exclusion:

We will not pay Personal Injury Protection Benefits for "bodily injury":

c. To any person who is not occupying a covered "auto", other than the "named insured" or any "family member" or a resident of New Jersey, if the "accident" occurs outside of New Jersey[.]

(*Id.* ¶ 19 (citing Doc. 7-1 at 42 § B.1.c).)

The Policy's New Jersey Personal Injury Form SA 22 30 12 17 also provides

**Pedestrian Personal Injury Protection ("Pedestrian PIP") Coverage**.  (*Id.* ¶ 20 (citing

Doc. 7-1 at 41 § A.3).)  The Policy's Pedestrian PIP insuring agreement provides:

This coverage applies to "pedestrians" and only to "accidents" which occur during the policy period in New Jersey.  With respect to an "insured motor vehicle" as described for this coverage, Pedestrian Personal Injury Protection Coverage is the only Personal Injury Protection Coverage for that vehicle.

We will pay Pedestrian Personal Injury Protection Benefits to an "eligible injured person".

(*Id.* ¶ 21 (citing Doc. 7-1 at 41 § A.3).)

---

[1] Defendant misquotes § E.3.a.2.  (*See* Doc. 19-3 ¶ 18.)  The Court substitutes the language contained in the Policy (Doc. 7-1 at 50).

For purposes of the Pedestrian PIP section,

    a.  "Eligible injured person" means:

        A person who sustains "bodily injury" while a "pedestrian", caused by an "insured motor vehicle" or as a result of being struck by an object propelled from the "insured motor vehicle".

    b.  "Insured motor vehicle" means a self-propelled motor vehicle designed for use principally on public roads which is not a "private passenger auto" and to which the liability coverage of this Coverage Form applies.

(Doc. 7-1 at 51 § E.5.)

The Policy provides **Auto Medical Payments Coverage** pursuant to the Policy's Auto Medical Payments Coverage Form CA 99 03 03 06. (Doc. 19-2 ¶ 24 (citing Doc. 7-1 at 80-81); Doc. 23 ¶ 24).)  The Auto Medical Payments Coverage is provided on a Covered Auto Symbol 7 basis. (*Id.* ¶ 25 (citing Doc. 7-1 at p. 29).)  The Description of Covered Auto Designation Symbols in the Business Auto Coverage Form indicates that Symbol 7 applies to "Specifically Described 'Autos'" described as "[o]nly those 'autos' described in Item Three of the Declarations for which a premium charge is shown (and for Liability Coverage any 'trailers' you don't own while attached to any power unit described in Item Three)."  (Doc. 7-1 at 52.)

The Auto Medical Payments Coverage insuring agreement provides:

We will pay reasonable expenses incurred for necessary medical and funeral services to or for an "insured" who sustains "bodily injury" caused by "accident". We will pay only those expenses incurred, for services rendered within three years from the date of the "accident."

(Doc. 19-2 ¶ 26 (citing Doc. 7-1 at 80 § A); Doc. 23 ¶ 23).)

The Policy's Auto Medical Payments Coverage section defines "insured" as:

1. You while "occupying" or, while a pedestrian, when struck by any "auto".

2. If you are an individual, any "family member" while "occupying" or, while a pedestrian, when struck by any "auto".

3. Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, loss or destruction.

(*Id.* ¶ 27 (citing Doc. 7-1 at 80 § B).)  Under the Policy, "the words 'you' and 'your' refer to the Named Insured." (*Id.* ¶ 28 (citing Doc. 7-1 at 52).)  Under the Auto Medical Payments Coverage section, the term "occupying" means "in, upon, getting in, on, out or off." (*Id.* ¶ 29 (citing Doc. 7-1 at 81 § F.2).)

Plaintiff provided notice to Selective of his claim for UM/UIM coverage under the Policy on April 10, 2019. (*Id.* ¶ 30.)  On June 19, 2019, counsel for Plaintiff informed Selective that Kohler was demanding the policy limits under the Policy. (*Id.* ¶ 31.)  In a letter dated July 18, 2019, Selective denied coverage for the claim. (*Id.* ¶ 32.)

On July 29, 2019, Plaintiff filed the above-captioned action alleging claims for Breach of Contract and Bad Faith. (Doc. 1.)  In the Breach of Contract claim, Count I, Plaintiff asserts that "Defendant has breached its contractual duties and obligations pursuant to the Policy by failing to make any payments to Plaintiff under the Uninsured motorist provision of the Selective Policy." (Doc. 1 ¶ 45.)  In the Bad Faith claim, Count II, Plaintiff alleges that "[t]he actions of Defendant in handling Plaintiff's UM Claim constitute bad faith under 42 Pa.

C.S.A. § 8371" for numerous reasons relating to the handling, investigation, and payment of the claim.  (Doc. 1 ¶ 48.)

On September 16, 2019, Defendant filed Selective Fire and Casualty Company's Answer and Affirmative Defenses to Plaintiff's Complaint and Counterclaim.  (Doc. 7.)  The declarations sought in the Counterclaim include that Plaintiff is not entitled to UM/UIM coverage, PIP benefits, Pedestrian PIP benefits, or Auto Medical Payment benefits.  (Doc. 19-3 ¶ 36; Doc. 23 ¶ 36.)

### III. STANDARD OF REVIEW

Summary judgment "is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Gonzalez v. AMR*, 549 F.3d 219, 223 (3d Cir. 2008).  "An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law."  *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  Thus, through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact.  *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  Once such a showing has been made, the non-

moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson*, 477 U.S. at 248. "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record . . . or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). In evaluating whether summary judgment should be granted, "[t]he court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir. 1992), *cert. denied* 507 U.S. 912, 113 S. Ct. 1262, 122 L. Ed. 2d 659 (1993).

However, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007). If a party has carried its burden under the summary judgment rule,

> its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not

lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.

*Id.* (internal quotations, citations, and alterations omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence."  *Anderson*, 477 U.S. at 255.  Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

## IV. ANALYSIS

Defendant contends that it is entitled to summary judgment on Plaintiff's Complaint and Selective's Counterclaim because Plaintiff is not entitled to coverage under the Policy based on the undisputed facts and as a matter of law.[2]  (Doc. 19-1 at 3.)

_____

[2] Selective's Counterclaim is brought under the federal Declaratory Judgments Act, 28 U.S.C. § 2201 (Doc. 7 at 9 ¶ 2) and seeks the following declarations:

(a) A declaration that Plaintiff is not an "insured" and is not entitled to Uninsured or Underinsured Motorist benefits under the Policy;
(b) A declaration that Plaintiff is not entitled to Personal Injury Protection benefits under the Policy;
(c) A declaration that Plaintiff is not entitled to Pedestrian Personal Injury Protection benefits under the Policy[;]
(d) A declaration that Plaintiff is not an "insured" and not entitled to Auto Medical Payment Benefit coverage under the Policy[;]

> The Policy provides uninsured motorist coverage only to persons "occupying" a "covered auto" and provides Personal Injury Protection ("PIP") Coverage only to named insureds or to residents of New Jersey if the accident occurs outside of New Jersey. Here, Kohler was not the named insured, was not occupying any vehicle, was not a resident of New Jersey, and the uninsured vehicle that struck Kohler in Puerto Rico was not a covered automobile under the Policy. For all these reasons and as more fully explained below, Kohler and the vehicle involved in the unfortunate accident are essentially strangers to the Policy; therefore, Kohler is not entitled to coverage under the Policy for the accident.

(Doc. 19-1 at 3.)

Plaintiff responds that the Defendant's Motion should be denied because a genuine issue of material fact exists as to whether the Selective policy is violative of public policy and the mandatory coverage provisions of New Jersey and Pennsylvania law. (Doc. 24 at 3.) More specifically, Plaintiff states that he "must be afforded UM and PIP coverage because the Selective Policy directly contravenes the mandatory coverage provisions of both Pennsylvania and New Jersey law thus rendering the policy invalid and unenforceable." (Doc. 24 at 5.)

As a preliminary consideration, the Court notes that under Pennsylvania law, it is well-established that the interpretation of an insurance policy is a matter of law that may be

---

(e) A declaration that the damages alleged by Plaintiff in its Complaint are not covered by and/or are excluded from coverage under the Policy;
(f) A declaration that Selective is not required to provide coverage to Plaintiff for the claims and damages asserted by Plaintiff in its Complaint;
(g) A declaration that Selective did not breach the Policy;
(h) A declaration that Selective did not commit bad faith[.]

(Doc. 7 at 14-15.)

properly resolved at summary judgment.  *Nationwide Mut. Ins. Co. v. Nixon,* 682 A.2d 1310,

1313 (Pa. Super. Ct. 1996).  It is also well-established under New Jersey law that the

interpretation and construction of an insurance policy is a matter of law.  *Willey v. DD*

*Transp.*, No. A-6255-10T4, 2013 WL 4516039, at *4 (N.J. Super. Ct. App. Div. Aug. 27,

2013) (listing cases).  It follows that the determination of whether ambiguity exists is a

matter of law to be decided by the trial court.  *Id.*  Courts also routinely decide issues

involving enforcement of insurance contracts, including the question of whether provisions

of the policy are contrary to public policy.  *See, e.g., Darwin National Assurance Co. v. Fahy*

*Choi, LLC*, Civ. A. No. 13-7197, 2015 WL12698440, at *6 (D.N.J. Dec. 18, 2015); *see also*

*State Farm Mutual Automobile Ins. Co. v. Brodhead*, Civ. A. No. 3:08-CV-1767, 2009 WL

10685572, at *5 (M.D. Pa. Mar. 13, 2009) (question of public policy regarding insurance

policy to be determined by the court).

        Defendant first contends that New Jersey law applies in this diversity action because

"the Policy was drafted in accordance with New Jersey law, and the coverages at issue in

this matter are state-specific endorsements." (Doc. 19-1 at 6.)  Plaintiff does not refute

Defendant's choice-of-law provision but, nonetheless, asserts that the Policy violates both

Pennsylvania and New Jersey law.  (Doc. 24 at 3.)

**A.  Breach of Contract Claim**

**1. Uninsured Motorist Coverage**

As set out above, Defendant asserts that Plaintiff was denied coverage because,

given the facts of the case, he was not entitled to uninsured motorist coverage under the

terms of the policy.  With his argument that he is entitled to UM and PIP coverage because

the Policy violates state law and public policy, Plaintiff does not dispute that the Policy as

written does not provide him coverage.  (*See* Doc. 26.)

In response to Plaintiff's contention that the Policy's UM coverage provision violates

75 Pa. C.S. § 1731 (Doc. 24 at 5-6), Defendant maintains that, to the extent Pennsylvania

law were to apply to the provision of UM/UIM coverage, the Pennsylvania Motor Vehicle

Financial Responsibility Law ("MVFRL") provision upon which Plaintiff bases his argument

that the policy violates Pennsylvania state law, 75 Pa. C.S. § 1731(b), does not apply to the

Policy pursuant to § 1731(a).  (Doc. 26 at 2.)  Section 1731 is titled "Availability, scope and

amount of coverage" and provides in relevant part:

> **a) Mandatory offering.--**No motor vehicle liability insurance policy shall be
> delivered or issued for delivery in this Commonwealth, with respect to any
> motor vehicle registered or principally garaged in this Commonwealth, unless
> uninsured motorist and underinsured motorist coverages are offered therein or
> supplemental thereto in amounts as provided in section 1734 (relating to
> request for lower limits of coverage). Purchase of uninsured motorist and
> underinsured motorist coverages is optional.
>
> **(b) Uninsured motorist coverage.--**Uninsured motorist coverage shall
> provide protection for persons who suffer injury arising out of the maintenance
> or use of a motor vehicle and are legally entitled to recover damages therefor
> from owners or operators of uninsured motor vehicles. . . .

75 Pa. C.S. § 1731 (emphasis added).

Defendant's policy was issued out of Branchville, New Jersey, and delivered to Heart 9/11, a non-profit organization with a Newark, New Jersey, address.  (Doc. 7-1 at 16, 29.) The Policy's "Auto Schedule" lists seven New Jersey vehicles.  (*Id.* at 29.)   Plaintiff presents no evidence to refute these facts set out in the Policy or show that the covered vehicles were "principally garaged" in Pennsylvania.  Therefore, pursuant to section 1731(a), the directive in section 1731(b) upon which Plaintiff relies (*see* Doc. 24 at 6) does not apply to the Policy at issue here.  Therefore, Plaintiff's allegation that the Policy's UM/UIM Provision is unenforceable because it conflicts with 75 Ps. C.S. § 1731 (Doc. 24 at 9) is without merit.

Turning now to whether the Policy's UM/UIM coverage violates New Jersey law, the statutory provision at issue, N.J. Stat. § 17:28-1.1 provides:

> [A] motor vehicle liability policy or renewal of such policy of insurance, insuring against loss resulting from liability imposed by law for bodily injury or death, sustained by any person arising out of the ownership, maintenance or use of a motor vehicle, *issued in this State to a corporate or business entity* with respect to any motor vehicle registered or principally garaged in this State*, shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy. A policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity*, regardless of whether the individual is an additional named insured under that policy or is a named insured or is covered under any other policy providing uninsured or underinsured motorist coverage.

N.J. Stat. § 17:28-1.1(f) (emphasis added).

Plaintiff posits that the Policy violates section 17:8-1.1(f) because it is "written such that employees of Heart 9/11 are wholly precluded from recovering Uninsured Motorist benefits unless they are occupying a covered automobile at the time of the incident." (Doc. 24 at 11.)  Plaintiff does not explain how this result violates section 17:28-1.1(f), nor does he address the effect of his volunteer rather than employee status with Heart 9/11.

The Policy states that under the UM/UIM Coverage insuring agreement Defendant

> will pay all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle" or an "underinsured motor vehicle".   The damages must result from "bodily injury" sustained by the "insured", or "property damage" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of an "uninsured motor vehicle" or an "underinsured motor vehicle".

(Doc 7-1 at 32 § A.1).)  The UM/UIM section of the Policy defines "insured" as follows:

> If the named insured is designated in the Schedule or Declaration as a partnership, limited liability company, corporation or any other form of organization, then the following are 'insureds':
>
> a.  Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.
>
> b.  Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".
>
> c.  The Named Insured for "property damage" only.

(*Id.* ¶ 13 (citing Doc. 7-1 at 33 § B.2).)

In the context of section 17:28-1.1(f)'s directive that "[a] policy that names a corporate or business entity as a named insured shall be deemed to provide the maximum uninsured or underinsured motorist coverage available under the policy to an individual employed by the corporate or business entity," Plaintiff appears to contend that the UM/UIM definition of "insured" conflicts with the Policy's provision that "Defendant is required to pay compensatory damages that an 'insured' is legally entitled to recover as compensatory damages from the owner or driver of an uninsured motor vehicle." (Doc. 24 at 11 (citing Doc. 7-1 at 32 § A.1).) However, because the UM/UIM coverage provision incorporates the definition of "insured," the "maximum uninsured . . . motorist coverage available under the policy," N.J. Stat. § 17:28-1.1(f), cannot be determined without reference to the definitional section of the Endorsement. No definition of "insured" found in the Policy's UM/UIM definitional section set out above applies in the situation presented here no matter who the injured party is. For everyone potentially covered by the Policy, the Policy payment for personal bodily injury would be the sums the individual "is legally entitled to recover as compensatory damages from the owner or driver of an 'uninsured motor vehicle'" only if that person was "'occupying' a covered 'auto' or a temporary substitute for a covered 'auto.'" (See Doc. 7-1 at 32 § A.1, 33 § B.2.a.) Because the facts of this case do not present such a scenario, the statutorily mandated "maximum uninsured or underinsured motorist coverage available under the policy," N.J. Stat. § 17:28-1.1(f), in the situation presented

here is zero.[3]  Therefore, Defendant's denial of UM coverage does not violate New Jersey

law, and Plaintiff's Breach of Contract claim cannot go forward on the basis alleged.

Plaintiff does not dispute Defendant's assertion that, under New Jersey law, "courts

enforce policy provisions limiting UM/UIM Coverage to individuals 'occupying' a covered

auto" as the UM/UIM coverage is limited here.  (Doc. 19-1 at 8 (citing *Thompson v. James*,

946 A.2d 1090, 1096 (N.J. Super. Ct. App. Div. 2008); *CNA Ins. Co. v. Canning*, 743 A.2d

386, 389 (N.J. Super. Ct. App. Div. 2000)).)  Further, Plaintiff's reliance on *Universal*

*Underwriters Ins. Co., Recreational Products Ins. Div. v. New Jersey Mfrs. Ins. Co.*, 690

A.2d 1104 (N.J. Super Ct. App. Div. 1997), is misplaced in that the appellate court found it

improper to import exclusions under one provision of the policy into the UM/UIM provision in

a case where the named insured sought UIM coverage and the lower court had granted

summary judgment for the defendant based on an exclusion in the liability section of the

policy.  Following a review of relevant caselaw, the Superior Court stated that the "cases

make clear that it is improper to incorporate a policy's liability exclusions, which are vehicle

---

[3] Plaintiff does not argue that he is provided less coverage than the named insured under the policy. While the third definition of "insured" in the UM/UIM section treats the named insured differently from an employee of the named insured, providing that "insured" is "[t]he Named Insured for 'property damage' only" (Doc. 7-1 at 33 § B.2.c), further discussion of whether the provision is consistent with section 17:28-1.1(f)'s requirement that a policy issued to a corporate or business entity "shall not provide less uninsured or underinsured motorist coverage for an individual employed by the corporate or business entity than the coverage provided to the named insured under the policy," *id.*, is not warranted because, even if Plaintiff were considered an employee, property damage is not at issue here.

oriented, into the underinsured motorist provisions because the two sections provide entirely

separate and distinct types of coverage."  *Id.* at 112.

Here, Defendant's denial of UM/UIM coverage was not based on an exclusion

contained in another section of the Policy.  The New Jersey Superior Court recognized this

distinction as dispositive in *Katchen v. Gov't Employees Ins. Co.*, 202 A.3d 627 (N.J. Super.

Ct. App. Div. 2019), finding that *Universal Underwriters* did not apply where "the UIM

exclusion at issue appeared in the section dealing with UIM coverage."  *Id.* at 632 (noting

that "[t]his case concerns the application of a clearly-worded UIM provision to a UIM claim.")

Thus, Plaintiff has presented no basis to undermine the Court's determination that the

Policy's UM/UIM coverage does not violate New Jersey law.

Similarly, Plaintiff has presented no basis to conclude that the Policy's UM/UIM

coverage offends public policy.

A recent New Jersey Superior Court case stated:

> We recognize courts are not bound to enforce contracts that are contrary to
> public policy. *Sacks Realty Co., Inc. v. Shore*, 317 N.J. Super. 258, 269 (App.
> Div. 1998). "[S]ources of public policy include legislation; administrative rules,
> regulations or decisions; and judicial decisions." *Vitale v. Schering-Plough
> Corp.*, 447 N.J. Super. 98, 112 (App. Div. 2016) (alteration in original)
> (quoting *Hitesman v. Bridgeway Inc.*, 430 N.J. Super. 198, 218 (App. Div.
> 2013)). In its brief on appeal, plaintiffs argue in conclusory fashion the
> volunteer requirement is contrary to public policy but, as noted, they fail to
> identify any statutory, administrative, or judicial sources of a public policy
> barring [the contract provision at issue].

*Special Police Org. of New Jersey v. City of Newark*, No. A-4168-19, 2022 WL 2912038, at

*11 n.11 (N.J. Super. Ct. App. Div. July 25, 2022).

Plaintiff's reliance on Pennsylvania's MVFRL and New Jersey statutory and caselaw as sources of public policy is without merit in that the Count has found that the Selective Policy is not in conflict with any of these sources of public policy.  Thus, Plaintiff has presented no recognized source of public policy applicable to this case and, therefore, provides no basis that the Selective Policy should not be enforced.

## 2.  Personal Injury Protection Coverage

Defendant states that Plaintiff is not entitled to PIP coverage under the Policy because he is not an "eligible injured person" as that term is defined for PIP purposes. (Doc. 19-1 at 11.)  Defendant also maintains that the Policy's PIP coverage does not violate New Jersey or Pennsylvania law.  (*Id.* at 11-12.)  Although Plaintiff states that he "must be afforded UM and PIP coverage because the Selective Policy directly contravenes the mandatory coverage provisions of both Pennsylvania and New Jersey law thus rendering the policy invalid and unenforceable" (Doc. 24 at 5), Plaintiff presents argument only as to Pedestrian PIP coverage (*see* Doc. 24 at 13-15.) which is subject in part to definitions and exclusions different from those applicable to the PIP coverage section of the Policy.  *See supra* pp. 4-6.  Because Plaintiff does not refute Defendant's contention that he is not eligible for PIP coverage under the Policy, further discussion of this issue is not warranted.[4]

---

[4] Pursuant to the PIP coverage provisions set out in the Statement of Undisputed Facts, *see supra* pp. 4-5, the Court finds no error in Defendant's analysis of this claim.

With this conclusion, Defendant's denial of PIP coverage under the policy does not provide a basis for the Breach of Contract claim to go forward.

### 3. Pedestrian Personal Injury Protection Coverage

Defendant states that the Policy's Pedestrian Personal Injury Protection is not available to Plaintiff because the definitions applicable to this coverage preclude coverage in the situation presented here.  (Doc. 19-1 at 13.)  Plaintiff responds that he "must be entitled to Pedestrian PIP coverage because the terms of the Selective Policy are vague, ambiguous, and subject to multiple interpretations."  (Doc. 24 at 13.)

As set out previously, *see supra* pp. 5-6, the Policy's New Jersey Personal Injury Form SA 22 30 12 17 also provides Pedestrian Personal Injury Protection ("Pedestrian PIP") Coverage.  (Doc. 7-1 at 41 § A.3.)  The Policy's Pedestrian PIP insuring agreement provides:

> This coverage applies to "pedestrians" and only to "accidents" which occur during the policy period in New Jersey.  With respect to an "insured motor vehicle" as described for this coverage, Pedestrian Personal Injury Protection Coverage is the only Personal Injury Protection Coverage for that vehicle.

> We will pay Pedestrian Personal Injury Protection Benefits to an "eligible injured person".

(Doc. 7-1 at 41 § A.3).)  For purposes of the Pedestrian PIP section,

> a.  "Eligible injured person" means:

> > A person who sustains "bodily injury" while a "pedestrian", caused by an "insured motor vehicle" or as a result of being struck by an object propelled from the "insured motor vehicle".

b. "Insured motor vehicle" means a self-propelled motor vehicle designed for use principally on public roads which is not a "private passenger auto" and to which the liability coverage of this Coverage Form applies.

(Doc. 7-1 at 51 § E.5.)

Defendant asserts that the Pedestrian PIP coverage is not available to Plaintiff because he "was injured in an accident that occurred outside of New Jersey, and the vehicle that struck Kohler was not an insured motor vehicle." (Doc. 19-1 at 13.)

Plaintiff contends the requirement that the accident occur in New Jersey found in the Pedestrian Personal Injury Protection provision on page 41 of the Policy "is in direct contrast to the very next page of the policy which specifically provides that the exclusion on page 41 (coverage is not afforded if the accident occurs outside of New Jersey) does not apply to Pedestrian PIP coverage." (Doc. 24 at 13 (citing Doc. 7-1 at 42-43).)

Defendant responds to this purported ambiguity as follows:

Kohler points to the fact that the Policy's Pedestrian PIP Coverage section includes a provision that states: "The exclusions that apply to Personal Injury Protection also apply to Pedestrian Personal Injury Protection, except Exclusions b. and c., which do not apply to Pedestrian Personal Injury Protection Coverage." (*Id.* at p. 43 § B.[ ]3). In turn, Exclusion c. states that PIP Coverage is not available "[t]o any person who is not occupying a covered 'auto', other than the 'named insured' or any 'family member' or a resident of New Jersey, if the 'accident' occurs outside of New Jersey." (*Id.* at p. 42 § B.1.c). Kohler argues these provisions create an ambiguity. However, the Pedestrian PIP Coverage's insuring agreement itself states that the accident must occur in New Jersey in order for Pedestrian PIP Coverage to apply. Therefore, there is no need for the Pedestrian PIP Coverage section to exclude coverage for accidents that occur outside of New Jersey, as that would create an unnecessary redundancy.

(Doc. 26 at 12.)

The Pedestrian PIP provision of the Policy, § A.3, clearly states that it applies "only to accidents which occur during the policy period in New Jersey." (Doc. 7-1 at 41.)  The PIP exclusion found in § B.1.c that does *not* apply to the Pedestrian PIP protection pursuant to § B.3 speaks in terms of precluding PIP coverage, with limited exceptions, for accidents which occur "outside of New Jersey" if the person is not occupying a covered auto.  (Doc. 7-1 at 42, 43.)  Although this drafting is not ideal, the elimination of the PIP exclusion found in § B.1.c from consideration in the application of Pedestrian PIP coverage set out in § A.3 does negate the clear statement in § A.3 that coverage applies only to a pedestrian accident that occurred in the state of New Jersey.  In other words, when the identified exclusion is not applied to the Pedestrian Personal Injury Protection coverage provision, what remains is the requirement that the accident must have occurred in New Jersey.

Further, while it is true that ambiguous policy provisions must be construed against the insurer and courts should adopt the interpretation supporting coverage (*see* Doc. 24 at 14 (listing cases)), Plaintiff would not be entitled to Pedestrian PIP coverage even if the Court assumed *arguendo* that the claimed ambiguity existed.  The ambiguity identified by Plaintiff hinges on the provision that Pedestrian PIP coverage applies only to accidents that occur in New Jersey.  (Doc. 24 at 13.)  Contrary to Plaintiff's contention that Defendant relied only on the provision which states that Pedestrian PIP coverage only applies to accidents that occur in New Jersey (*id.*), Defendant also explained why Plaintiff was not eligible for Pedestrian PIP coverage based on the definition of "eligible injured person" (*see*

Doc. 19-1 at 13).  Thus, Plaintiff's argument misses the unrefuted fact that, even if the accident were to have occurred in New Jersey, he would not be entitled to Pedestrian PIP coverage because he is not an "eligible injured person" as that term is specifically defined for Pedestrian PIP purposes.  There is no dispute that only an "eligible injured person" will be paid Pedestrian PIP benefits under the Policy and, for this coverage, being an "eligible injured person" includes the requirement that the bodily injury sustained was caused by an "insured motor vehicle."  Because there is no dispute that Plaintiff's injuries were caused by a vehicle which was *not* insured, he cannot be an "eligible injured person" and would not be entitled to Pedestrian PIP coverage irrespective of where the accident occurred.  Therefore, Plaintiff's assertion that summary judgment should not be granted because of the ambiguity related to Pedestrian PIP is without merit.

Plaintiff's argument that the Policy's Pedestrian PIP coverage is contrary to public policy is also without merit.  Conclusory assertions that a denial of coverage violates public policy are not sufficient to show that the Policy as written and applied violates public policy.  *Special Police Org. of New Jersey,* 2022 WL 2912038, at *11 n.11; *BSD-360 v. Philadelphia Indemnity Ins. Co.*, 580 F. Supp. 3d 92, 108-09 (E.D. Pa. 2022).  Here, Plaintiff states that "[t]o the extent the Selective Policy denies pedestrians such as Plaintiff their legal right to recover compensatory damages, the Policy is void against the public policy of the MVFRL and New Jersey Statutory Law." (Doc. 24 at 15.)  As discussed above, Plaintiff has not been denied a "legal right" to recover compensatory damages.  He was appropriately

denied coverage under the Policy and the Policy does not violate applicable law.  Therefore, Plaintiff's conclusory assertion fails to show that the denial of coverage in this case offends public policy.

### 4. Medical Payment Coverage

Defendant argues that Plaintiff is not entitled to coverage under the Policy's Medical Payment Coverage Form.  (Doc. 19-1 at 13.)  Plaintiff does not address this issue in his opposition brief.  (*See* Doc. 24.)  Because Plaintiff does not refute Defendant's contention that he is not eligible for Medical Payment coverage under the Policy, further discussion of this issue is not warranted.[5]

### B. Bad Faith Claim

In the brief supporting summary judgment, Defendant merely references Plaintiff's bad faith claim.  (Doc. 19-1 at 1, 2.)  Although Defendant does not argue that it is entitled to summary judgment on the bad faith claim, it asserts that "[b]ecause Selective properly denied Kohler's Claim for benefits under the Policy and there are no genuine disputes as to any material fact, Selective is entitled to judgment as a matter of law on Kohler's Complaint and Selective's Counterclaim."  (Doc. 19-1.)  With this statement and in its proposed Order (Doc. 19-4 at 1),

---

[5] Pursuant to the Medical Payment Coverage provisions set out in the Statement of Undisputed Facts, *see supra* pp. 6-7, the Court finds no error in Defendant's analysis of this claim.

Defendant contemplates that summary judgment be granted on its bad faith claim.

However, the Court cannot do so on the current record.

> A bad faith claim is an "independent cause of action to an insured that is not dependent upon success on the merits, or trial at all, of the contract claim." *Nealy v. State Farm Mut. Auto. Ins. Co.*, 695 A.2d 790, 792-93 (Pa. Super. Ct. 1997). But, if a bad-faith claim is premised solely on the denial of coverage, the claim must necessarily fail if a court finds that no coverage exists. *See Gallatin Fuels, Inc. v. Westchester Fire Ins. Co.*, 244 F. App'x 424, 435 (3d Cir. 2007) ("[I]f the insurer [is] correct as a matter of law in denying coverage, there is no basis for the [bad faith] claim" premised solely on a refusal to provide coverage). . . . On the other hand, "if bad faith is asserted as to conduct beyond a denial of coverage, the bad faith claim is actionable as to that conduct regardless of whether the contract claim survives." *Gold v. State Farm Fire & Cas. Co.*, 880 F. Supp. 2d 587, 598 (E.D. Pa. 2012) (citing *Gallatin Fuels*, 244 F. App'x at 435) (analyzing plaintiff's bad faith claim because it was "based largely on behavior beyond [Defendant's] denial of the claim").

*Ultimate Hearing Sols. II, LLC v. Twin City Fire Ins. Co.*, 513 F. Supp. 3d 549, 564 (E.D. Pa. 2021); *see also ABC Children's Dentistry, LLC v. Hartford Ins. Co.*, No. CV 20-10044, 2021 WL 4272767, at *7 (D.N.J. Sept. 21, 2021).

Here, in addition to bad faith based on denial of coverage, Plaintiff's bad faith claim includes allegations of bad faith based on "dilatory and abusive claims handling" and "[f]ailing to reasonably and adequately investigate the uninsured motorist claim." (Doc. 1 ¶ 48(a), (f).)  Because Plaintiff's bad faith claim is not based solely on denial of coverage, it does not ride on the success of the breach of contract claim.   *Ultimate Hearing Sols II,* 513

F. Supp. 3d at 564.  Therefore, Defendant has not shown that it is entitled to summary

judgment on Plaintiff's bad faith claim and this claim goes forward. [6]

## C. Defendant's Counterclaim

As set out in the margin above, Defendant seeks numerous declarations related to

its Counterclaim seeking declaratory relief pursuant to 28 U.S.C. § 2201.  *See supra* p. 10

n.2 (citing Doc. 7 at 14-15.)  Under the Declaratory Judgment Act ("DJA"), "any court of the

United States, upon the filing of an appropriate pleading, may declare the rights and other

legal relations of any interested party seeking such declaration, whether or not further relief

is or could be sought." 28 U.S.C. § 2201(a).

The only issues for which Defendant has presented argument in its briefing of

the pending Motion are related to UM/UIM coverage, PIP coverage, Pedestrian PIP

coverage, and Auto Medical Payments coverage.  (*See* Docs. 19-1, 26.)  The

foregoing discussion of these issues indicates that Plaintiff's motion for summary

judgment on its Counterclaim is appropriate as to the following:

(a) A declaration that Plaintiff is not an "insured" and is not entitled to
Uninsured or Underinsured Motorist benefits under the Policy;

(b) A declaration that Plaintiff is not entitled to Personal Injury Protection
benefits under the Policy;

---

[6] Defendant notes in his supporting brief that "[o]n December 6, 2019, Selective filed a Motion to Bifurcate and/or Stay Discovery on Plaintiff's Bad Faith claims (Doc. 14). The Motion is fully briefed.  (Doc. 14-18.)" (Doc. 19-1 at 2.)  With the disposition of the Motion for Summary Judgment and the fact that only the Complaint's claim for Bad Faith in Count II will go forward, the Court will deem the Motion to Bifurcate moot.

(c) A declaration that Plaintiff is not entitled to Pedestrian Personal Injury Protection benefits under the Policy; [and]

(d) A declaration that Plaintiff is not an "insured" and not entitled to Auto Medical Payment Benefit coverage under the Policy.

(Doc. 7 at 14.)

For the reasons stated above in the discussion of summary judgment on Plaintiff's bad faith claim, *see supra* pp. 24-25, Defendant is not entitled to summary judgment on its counterclaim insofar as it seeks additional declarations and relief, including a "declaration that Selective did not commit bad faith" (Doc. 7 at 15).

## V. CONCLUSION

For the reasons discussed above, Selective Fire and Casualty Insurance Company's Motion for Summary Judgment (Doc. 19) will be granted in part and denied in part.  The Motion will be granted as to Plaintiff's claim for Breach of Contract in Count I of the Complaint (Doc. 1 at 8) and requests for declaratory relief set out in the preceding section of this Memorandum Opinion (sections (a) through (d) of the "Wherefore" clause of Defendant's Counterclaim (Doc. 7 at 14).  The Motion will be denied as to Plaintiff's claim for Bad Faith in Count II of the Complaint (Doc. 1 at 9) and the additional relief requested in Defendant's Counterclaim (Doc. 7 at 14-15).  Defendant's request for oral argument (Doc. 19 at 1) will be denied. Selective Fire and Casualty Insurance Company's Motion to Bifurcate and/or Stay

Discovery on Bad Faith Claims (Doc. 14) will be deemed moot.  A separate Order will

be entered.

Robert D. Mariani
United States District Judge